**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Sharon Brown, Appellant,

v.

Cherokee County School District, Respondent.

Appellate Case No. 2017-001466

———————

Appeal From Cherokee County
J. Mark Hayes, II, Circuit Court Judge

———————

Unpublished Opinion No. 2020-UP-013
Submitted December 2, 2019 – Filed January 15, 2020

———————

**AFFIRMED**

———————

Fletcher N. Smith, Jr., of Law Firm of Fletcher N. Smith, Jr., LLC, of Greenville, for Appellant.

Andrea Eaton White, of White & Story, LLC, of Columbia, for Respondent.

———————

**PER CURIAM:** Sharon Brown appeals the circuit court's orders affirming the Cherokee County School District Board of Trustees' (the Board's) decision to terminate her employment with the Cherokee County School District (the District) because she manifested an unfitness for teaching. On appeal, Brown raises

numerous issues, including whether (1) substantial evidence supported the Board's finding she was unfit to teach; (2) the Board was fair and impartial; (3) her due process rights were violated; (4) the charges brought by the District were moot because the alleged victim stated Brown did not touch him; (5) the Board and circuit court erred in not ruling that Brown, as a contract teacher, was not under contract during the summer months and, therefore, had no duties or obligations to the District during the summer months; and (6) the circuit court erred in ruling on her appeal to it when the Board never filed the transcript of the teacher dismissal hearing with the circuit court. We affirm.

## I.   FACTS

During the 2014-15 school year, the District employed Brown as a second grade teacher at Luther Vaughn Elementary School (LVES). Beth Owens, another second grade teacher at LVES, alleged that on Thursday, May 28, 2015, she and her husband were walking down a hallway at LVES at 1:20 p.m. when she saw Brown standing with a student pressed against the wall. Owens further alleged when the student turned to look at her, Brown used her fingers to turn his head back towards her. Owens reported this incident to Nanette Ruppe, the principal of LVES at the time of the incident.[1] Justin Kelly, the art teacher at LVES, alleged that on May 28, 2015, he saw Brown put her hands on the chin of Student J, the alleged victim; push Student J against the wall; and talk in an angry tone to Student J. Kelly explained this incident happened while Brown was bringing her class to his classroom for art around 1:10 or 1:15 p.m, and he saw the incident through a crack in his doorway. The next day, May 29, 2015, Kelly reported this incident to Ruppe and wrote a statement detailing the incident.

After receiving these two reports, Ruppe called Dr. Carpenter, the Director of Human Resources for the District, to report the situation. Dr. Carpenter informed the District Superintendent, Dr. Quincie Moore, about the incident, but they did not report the incident to law enforcement. On the following Monday, June 1, 2015, Dr. Carpenter met with Ruppe and Kelly. On the same day, Dr. Carpenter and Ruppe met with Brown, who denied touching Student J. Dr. Carpenter told Brown she was being placed on paid administrative leave and to not discuss the case or have contact with students or other employees of the District.[2] At the meeting, Brown provided

_____

[1] On June 1, 2015, Owens wrote a statement detailing the incident.
[2] Although Ruppe stated Dr. Carpenter told Brown not to discuss the case with anyone and Dr. Carpenter stated he told Brown not to talk to other District employees or students, Brown asserts she was not given either of these directives at the meeting.

the names of Owens, Owens's husband, and Tracie Wilson, the behavior assistant at LVES, as potential witnesses in the case. Brown also provided a statement at this meeting. In her statement, Brown stated she heard Student J use the phrase "I hate" as he walked to the art room, and after returning to her classroom, she decided she needed to deal with the "I hate" statement, so she went to the art room, asked to speak with Student J, and spoke to Student J outside of the art room about the issue. Brown later wrote a second statement, responding to Kelly's statement and denying forcibly touching Student J, shoving him against a wall, and verbally assaulting him. Following the meeting with Brown, Dr. Carpenter sent Brown a letter dated June 1, 2015, that was taken to the post office on June 2, 2015. The letter stated, "you should not have any contact with school district employees or students in any manner while you are on administrative leave." Ruppe also met with Student J, who told her Brown did not touch him, and Student J's mother reported that Student J told her Brown did not touch him.

Brown received a card in her mailbox notifying her of the certified letter from Dr. Carpenter on June 10, 2015, and she picked it up from the post office on June 11, 2015. However, before Brown received the letter, she ran into Wilson at a Ross clothing store on June 5, 2015. Wilson initiated a conversation with Brown by saying "hello," and they had a conversation, including discussing the incident with Student J. In particular, Wilson stated Brown told Wilson she provided Dr. Carpenter Wilson's name as a witness to an incident between her and Student J; Dr. Carpenter was going to call Wilson to talk about what happened between Brown and Student J; and Brown described the incident, telling Wilson what she "was supposed" to have seen. Wilson stated she did not know Dr. Carpenter was going to call her, and she did not know about the incident with Student J until Brown told her about it.[3] She also did not know Brown was on administrative leave. Wilson stated Brown told her Brown was "not supposed to be talking to [her]" or "discussing" the case with her. Brown, however, asserts when she spoke to Wilson, she had not been told or at least did not recall having been told to not discuss the case or not to talk to other District employees. On June 22, 2015, Wilson told Ruppe about her

_____

[3] On June 1, 2015, Ruppe asked Wilson to give a statement about what happened on May 28, 2015. In the statement, Wilson explained she went to Kelly's last period art class that day, she arrived after Brown had already dropped off her students and the class had already started, and Brown came to the classroom and asked to see a student, whose name Wilson did not remember. Wilson stated Kelly "said ok" and let the student leave the room, but she did not remember if the student returned to class that day. She did not provide any information about the incidents with Student J allegedly seen by Kelly and Owens.

conversation with Brown at Ross, and Ruppe told Wilson to write a statement about the conversation with Brown to bring when she met with Dr. Carpenter and Dr. Moore. Dr. Carpenter contacted Wilson on June 16, 2015, and Wilson met with Dr. Carpenter and Dr. Moore on June 29 or 30, 2015.

On July 31, 2015, Brown met with Dr. Carpenter and Dr. Moore. At the meeting Brown again denied touching Student J, and Dr. Moore reported Brown gave her a "completely different" version of the interaction with Wilson at Ross than the one given by Wilson. In particular, Dr. Moore noted while Brown admitted she spoke with Wilson at the store, she did not recall being told not to talk to District employees by Dr. Carpenter at the June 1, 2015 meeting with him and Ruppe, and she did not recall discussing this directive with Wilson. After meeting with Brown, Dr. Moore concluded Kelly and Owens witnessed two separate interactions between Student J and Brown: (1) Kelly witnessed Brown put her hands on Student J before Kelly's art class began, and (2) Owens witnessed Brown's interaction with Student J when she went back to speak with Student J to "rectify the situation" after the art class had already started. Dr. Moore also concluded Brown admitted she spoke with Wilson after being given the directive from Dr. Carpenter. Dr. Moore decided (1) Brown went against the directive given to her by Dr. Carpenter to not speak to other District employees when she spoke to Wilson; (2) Brown was dishonest because she denied touching a student, despite Kelly's and Owen's testimony otherwise; and (3) by speaking to Wilson, Brown intervened in the investigation of the incidents with Student J. Accordingly, Dr. Moore recommended the District terminate Brown's contract.

On August 11, 2015, Dr. Moore notified Brown she was going to recommend the Board terminate Brown's teaching contract pursuant to the South Carolina Teacher Employment and Dismissal Act (the Act),[4] particularly section 59-25-430 of the South Carolina Code (2019).[5] In the letter, Dr. Moore specified she was

---

[4] S.C. Code Ann. §§ 59-25-410 to -530 (2019).

[5] Section 59-25-430 provides:

> Any teacher may be dismissed at any time who shall fail, or who may be incompetent, to give instruction in accordance with the directions of the superintendent, or who shall otherwise manifest an evident unfitness for teaching; provided, however, that notice and an opportunity shall be afforded for a hearing prior to any dismissal.

recommending Brown be terminated because (1) Brown "willfully violate[d] a school directive," given to her on June 1, 2015, by Dr. Carpenter; (2) Brown was dishonest in her answers to Dr. Moore's questions regarding the May 28, 2015 incidents and the June 5, 2015 interaction with Wilson, and (3) "if [Brown] did grab the student in a forceful or violent manner, that would serve as an additional ground for [Brown's] immediate termination." In the letter, Dr. Moore specifically mentioned Brown's conversation with Wilson at Ross, noting Brown admitted she spoke to Wilson and asked if Wilson had spoken with Dr. Carpenter. The letter also informed Wilson she could request an evidentiary hearing regarding her termination within fifteen days of her receipt of the letter.

Brown requested a hearing on her termination, and on October 7, 2015, a hearing was held. Prior to opening statements, the Board Chairwoman stated how the hearing would proceed, including that "Board Members may examine all witnesses and documents presented" by both the District and Brown. Kelly, Ruppe, Carpenter, Owens, Wilson, and Dr. Moore all testified at the hearing on behalf of the District, and Brown testified for herself.[6] During the hearing, one of the Board members, Robin Harper, interjected into Brown's cross-examination of the District's witnesses on multiple occasions. In particular, Harper interjected into the cross-examination of Wilson when Brown asked Wilson if she knew the name of the child Brown asked to see during Kelly's art class on May 28, 2015. Wilson replied she did not, but when asked if she remembered now, she stated she did. At this point, Harper interjected, stating Wilson had testified she did not know who the child was until she ran into Brown at Ross, and Brown told Wilson it was Student J. Harper then asked Wilson, "Isn't that what you said," and Wilson replied, "Right." Harper also interjected during Brown's cross-examination of Dr. Moore when Brown questioned whether Dr. Moore had done a thorough investigation of the case despite the fact that she had not interviewed Student J. Harper stated, "And I want to know. Can you talk to a seven-year old?" Harper continued, clarifying she was not aware of whether a psychologist or an advocate would need to be present when questioning a child.

Ultimately, on October 15, 2015, the Board unanimously voted to accept Dr. Moore's recommendation that Brown's contract be terminated because Brown manifested an unfitness for teaching by (1) having inappropriate interactions with a student, (2) acting in insubordination to the directive given to her by the District to not talk to other District employees during the investigation, and (3) being dishonest when

---

[6] Each of the witnesses provided testimony similar or identical to that found in their original allegations and statements discussed above.

answering Dr. Moore's questions. On November 5, 2015, Brown filed a notice of intent to appeal the Board's decision and an appeal brief.[7]

On June 20, 2016, the circuit court held a hearing on Brown's appeal, and on August 1, 2016, the circuit court filed an order upholding the Board's decision to terminate Brown's teaching contract, finding:

> While there is very little evidence [Brown] "violently" grabbed the student or that she verbally "assaulted" the student . . . [t]here is substantial evidence . . . [she] was told not to have discussions about her suspension with school personnel . . . . There is also substantial evidence . . . that after [she] was told not to discuss the investigation, [she] tried to influence another school employee who was a potential witness in the investigation. There was also substantial evidence that [she] was dishonest in her responses about the conversation with this witness.

The circuit court also noted substantial evidence supported the Board's decision that the inappropriate interaction with Student J occurred, but it stated if this had been the only reason to terminate Brown, then it may have found section 59-25-440 of the South Carolina Code (2019)[8] required the District to take reasonable efforts to correct Brown's actions prior to dismissing her. Brown filed a motion to reconsider, and the circuit court denied the motion. This appeal followed.

## II. STANDARD OF REVIEW

---

[7] Brown later filed two amended briefs, a memorandum in support of her second amended brief, and another brief. Brown's arguments in each of these documents are substantially the same.

[8] Section 59-25-440 provides:

> Whenever a superior . . . finds it necessary to admonish a teacher for a reason he believes may lead to . . . dismissal . . . he shall: (1) bring the matter in writing to the attention of the teacher involved and make a reasonable effort to assist the teacher to correct whatever appears to be the cause of potential dismissal . . . and, (2) . . . allow reasonable time for improvement.

"Judicial review of a school board decision terminating a teacher is limited to a determination whether it is supported by substantial evidence. The court cannot substitute its judgment for that of the school board." *Felder v. Charleston Cty. Sch. Dist.*, 327 S.C. 21, 25, 489 S.E.2d 191, 193 (1997); *see also Laws v. Richland Cty. Sch. Dist. No. 1*, 270 S.C. 492, 495, 243 S.E.2d 192, 193 (1978) ("[T]he standard by which the Board's decision is to be gauged [is] whether the grounds given for termination of the respondent's employment are supported by 'substantial evidence.'"). "'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the [Board] reached or must have reached in order to justify its action." *Laws*, 270 S.C. at 495–96, 243 S.E.2d at 193. "Courts will not interfere with the exercise of discretion by school boards in matters committed by law to their judgment unless there is clear evidence that the board has acted corruptly, in bad faith, or in clear abuse of its powers." *Singleton v. Horry Cty. Sch. Dist.*, 289 S.C. 223, 227–28, 345 S.E.2d 751, 753 (Ct. App. 1986). "An appellate court will not substitute its judgment for that of school boards in view of the powers, functions[,] and discretion which must necessarily be vested in such boards if they are to execute the duties imposed upon them." *Id.* at 228, 345 S.E.2d at 754. "[I]f any of the charges against a teacher are supported by substantial evidence, the school board's decision to dismiss must be sustained." *McWhirter v. Cherokee Cty. Sch. Dist. No. 1*, 274 S.C. 66, 68, 261 S.E.2d 157, 158 (1979).

## III. BROWN'S APPEAL

### A. Brown's Unfitness to Teach

Brown argues substantial evidence did not support a finding she was unfit to teach. We disagree.

We find the circuit court did not err in affirming the Board's finding that Brown was unfit to teach pursuant to section 59-25-430 on the ground that she was dishonest to Dr. Moore. § 59-25-430 ("Any teacher may be dismissed at any time . . . who shall otherwise manifest an evident unfitness for teaching . . . . Evident unfitness for teaching is manifested by conduct such as, but not limited to . . . dishonesty. . . .").

Dr. Moore testified she concluded Brown was dishonest to her because she denied touching a student despite Kelly's and Owen's assertions otherwise, and she was dishonest when she stated she did not remember being given a directive not to speak to other employees by Dr. Carpenter and denied discussing this directive with Wilson. Although it is questionable whether substantial evidence existed that Brown actually engaged in inappropriate interactions with Student J—particularly given Student J's statement that nothing happened—substantial evidence supports that Brown was given the directive at the meeting on June 1, 2015, and was aware of the directive during her conversation with Wilson on June 5, 2015, given Ruppe's and Carpenter's testimony that Brown was told to either not discuss the case with anyone or to not talk to other District employees and Wilson's testimony that when she spoke to Brown about the incident, Brown repeatedly told Wilson she was not supposed to be talking about the case with Wilson. Thus, substantial evidence supports a finding that Brown lied to Dr. Moore about her conversation with Wilson, and specifically, substantial evidence supports that Brown lied when she stated she did not remember the directive given to her by Dr. Carpenter on June 1, 2015, at the time of her conversation with Wilson. Therefore, we believe the circuit court did not err in affirming the Board on this ground for Brown's dismissal.

Because at least one ground for Brown's termination—Brown's dishonesty—was supported by substantial evidence, the circuit court did not err in affirming the Board's finding that Brown was unfit to teach pursuant to section 59-25-430, and we need not discuss the remaining grounds for Brown's dismissal. *See McWhirter*, 274 S.C. at 68, 261 S.E.2d at 158 ("[I]f any of the charges against a teacher are supported by substantial evidence, the school board's decision to dismiss must be sustained."); *see also Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal). Accordingly, we affirm the Board's determination that Brown was unfit to teach pursuant to section 59-25-430.

## B. Fair and Impartial Tribunal and Substantive Due Process

Brown argues the Board was not an impartial tribunal because (1) it had an inherent bias against her due to a prior case between the Board and Brown that ended with her reinstatement in late 2011; (2) Board member Harper's interjections into Brown's cross-examinations of Dr. Moore and Wilson denied Brown the opportunity for meaningful cross-examination; (3) another Board member closed her eyes for part of the hearing; (4) it showed bias by failing to take Student J and his mother at its word when they stated Brown did not touch Student J; (5) it exceeded the scope of

the reasons given by Dr. Moore for Brown's termination by using Brown's conversation with Wilson, which was not included in the letter from Dr. Moore to Brown as a reason for her termination, as grounds for the termination[9]; and (6) it used information received outside of the hearing in making its decision. We disagree.

We find Brown did not provide sufficient evidence the Board was actually biased against her. *Felder*, 327 S.C. at 26, 489 S.E.2d at 194 ("In order to disqualify a hearing tribunal, actual bias rather than a mere potential for bias must be shown."); *Green v. Clarendon Cty. Sch. Dist. Three*, 923 F. Supp. 829, 846 (D.S.C. 1996) ("It is Plaintiff's burden to show the existence of bias, rather than its mere possibility, and Plaintiff 'must overcome a presumption of honesty and integrity in those serving as adjudicators.'" (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975))). First, Brown failed to provide a sufficient record for this court to rule on the issues of whether the Board had a bias against her based on her prior case against the District in 2011 and whether a Board member demonstrated bias by closing her eyes for part of the board hearing. *See Harkins v. Greenville County*, 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000) (stating the appellants have the burden of providing this court an adequate record).

Next, Brown did not prove the Board was actually biased against her based on Harper's interjections during Brown's cross-examination of Dr. Moore and Wilson or that she suffered any prejudice due to the interjections because (1) as stated at the beginning of the hearing, Board members were permitted to "examine all witnesses"; (2) Harper's interjection into Wilson's testimony only elicited information about which Wilson had already testified—i.e. that she did not remember which student Brown asked to speak to during Kelly's art class on May 28, 2015, until Brown told her it was Student J during their conversation at Ross—and, thus, did not prejudice Brown; and (3) Harper's interjection during Brown's cross-examination of Dr. Moore to ask if you can "talk to a seven-year old child," appeared to be a genuine question regarding whether a psychologist or advocate would have also needed to be present when one questioned a child, not a comment on whether Student J's statements would have been believable. *See Felder*, 327 S.C. at 26, 489 S.E.2d at 193 ("Substantial prejudice is required to establish a violation of due process."); *id.* at 26, 489 S.E.2d at 193–94 ("Further, school board members are clothed with a presumption of honesty and integrity in the discharge of their decision-making

---

[9] Although Brown raises the issue of notice here, she also raises it in her procedural due process arguments, and we discuss the notice issue with the issue of whether Brown was afforded procedural due process in Section III.C.

responsibilities."); *id.* at 26, 489 S.E.2d at 194 ("In order to disqualify a hearing tribunal, actual bias rather than a mere potential for bias must be shown.").

Additionally, Brown's argument the Board was biased because Student J did not testify at the hearing is without merit because the Board does not call witnesses, the parties do, and as such, Brown should have called Student J if she wished for him to testify. *See State v. Curtis*, 356 S.C. 622, 632, 591 S.E.2d 600, 605 (2004) ("A party cannot complain of an error which his own conduct created."). Further, as to Brown's argument the Board was biased because it did not believe Student J's and his mother's statements that Brown did not touch him, we note the Board never stated it did not believe Student J and his mother. Moreover, even if the Board did not believe Student J and his mother, this is a credibility determination the Board was allowed to make, and without more evidence, this credibility determination does not demonstrate the Board was actually biased against Brown. *See Felder*, 327 S.C. at 26, 498 S.E.2d at 194 ("In order to disqualify a hearing tribunal, actual bias rather than a mere potential for bias must be shown.").

Finally, as to Brown's arguments regarding the Board using *ex parte* communications to reach its decision, this argument is without merit. While the Board used slightly different wording than that used by the witnesses at the hearing and may have attributed information to the wrong witness or witness statement, all of the information contained within the Board's decision was testified to by witnesses at the hearing or provided to the Board in the witnesses' statements. Thus, as this evidence was provided at the hearing, it does not constitute *ex parte* communications, and it does not indicate any actual bias against Brown on the part of the Board. *See Brown v. Bi–Lo, Inc.*, 354 S.C. 436, 440 n.3, 581 S.E.2d 836, 838 n.3 (2003) ("*[E]x parte* communication is defined as 'prohibited communication between counsel and the court when opposing counsel is not present.'" (quoting *Black's Law Dictionary* 597 (7th ed. 1999))).

Therefore, we find Brown failed to provide sufficient evidence the Board violated her substantive due process rights by acting with actual bias against her. *See Withrow*, 421 U.S. at 46 ("[A] 'fair trial in a fair tribunal is a basic requirement of due process.'" (quoting *In re Murchison*, 349 U.S. 133, 136 (1955))); *Felder*, 327 S.C. at 26, 498 S.E.2d at 194 ("In order to disqualify a hearing tribunal, actual bias rather than a mere potential for bias must be shown."); *Green*, 923 F. Supp. at 846 ("It is Plaintiff's burden to show the existence of bias, rather than its mere possibility, and Plaintiff 'must overcome a presumption of honesty and integrity in those serving as adjudicators.'" (quoting *Withrow*, 421 U.S. at 47)). Accordingly, we affirm as to this issue.

C. <u>Procedural Due Process And Notice</u>

Brown argues her due process rights were violated because the District did not inform her of all of the reasons for the proposed cancellation of her teaching contract—specifically, her conversation with Wilson—in a letter as required by section 59-25-460 of the South Carolina Code (2019).  We disagree.

First, we find Brown's procedural due process rights were not violated because the District provided her notice of the reasons for her dismissal in the August 11, 2015 letter and provided her an opportunity for an evidentiary hearing.  While the August 11, 2015 letter did not specifically detail the contents of Wilson's statement, Brown was nonetheless put on notice of the proposed grounds for her dismissal because Dr. Moore stated she was recommending that Brown's contract be terminated because (1) Brown "willfully violate[d] a school directive" given to her by Dr. Carpenter on June 1, 2015, to not speak with other District employees during the investigation; (2) Brown was dishonest in her answers to Dr. Moore's questions regarding the alleged incidents involving Student J on May 28, 2015, and the June 5, 2015 interaction with Wilson; and (3) "if [Brown] did grab the student in a forceful or violent manner, that would serve as an additional ground for [Brown's] immediate termination."  Furthermore, Dr. Moore mentioned Brown's interaction with Wilson at Ross on multiple occasions in the letter.  Thus, Brown had notice of the import of her interaction with Wilson to the Board's decision of whether to terminate her teaching contract, and she could have prepared a defense as to this issue.  Additionally, Brown's conversation with Wilson was not a separate ground for terminating Brown's contract; instead, it was incorporated into the ground that Brown violated Dr. Carpenter's directive to not talk to other District employees.  Furthermore, the letter informed Brown of her right to request an evidentiary hearing, which Brown did.  Thus, we believe August 11, 2015 letter satisfied the requirements of section 59-25-460.  *See* § 59-25-460(A) ("A teacher may not be dismissed unless written notice specifying the cause of dismissal first is given to the teacher by the superintendent and the teacher is given an opportunity for an evidentiary hearing."); *McWhirter*, 274 S.C. at 68, 261 S.E.2d at 158 (holding two letters sent to a principal "setting forth five fairly specific and unambiguous reasons for his suspension and eventual dismissal" satisfied the Due Process Clause and section 59-25-460).

Next, we note Brown's argument the August 11, 2015 letter stated her attorney was present at the July 31, 2015 meeting when her attorney was not.  However, this argument is without merit because (1) while parties attending a meeting to discuss potential reasons for a teacher's dismissal "must have the option of" having representation present, actually having such representation is not required by section

59-25-460; and (2) the presence of Brown's attorney at the July 31, 2015 meeting has no bearing on whether the District provided Brown notice of the grounds for dismissal in the August 11, 2015 letter. *See* § 59-25-460(A) ("The superintendent or his designee may meet with the teacher before issuing a notice of dismissal to discuss alternative resolutions. The parties attending this meeting must have the option of having a representative present.").

Finally, we also note Brown's argument the August 11, 2015 letter stated she, Ruppe, and Dr. Carpenter discussed things that they did not, including Wilson's statement and Owen's allegations. Nonetheless, these issues do not effect whether Brown's procedural due process rights were violated because even if Brown did not discuss this information with Ruppe and Carpenter at the July 31, 2015 meeting, such a meeting discussing the grounds for termination in person is not required by section 59-25-460, and Brown was still provided this information, along with notice of the grounds for her termination, in the August 11, 2015 letter. *See* § 59-25-460(A) ("The superintendent or his designee *may* meet with the teacher before issuing a notice of dismissal to discuss alternative resolutions." (emphasis added)).

Therefore, we find the District provided notice to Brown of the grounds for her termination as required by section 59-25-460 and, thus, did not violate her procedural due process rights. Accordingly, we affirm as to this issue.

### D. The District's Policies and Reporting of Child Abuse

Brown argues because teaching contracts incorporate state law and school district policies and South Carolina law and the District's policies include a "mandatory requirement for reporting of allegations of child abuse," the District violated both state law and its own policies by not reporting the alleged incident between Student J and Brown as child abuse.

This issue is without merit. First, we note the District states it did not ever believe Brown's actions rose to the level of child abuse; thus, the District did not violate its policies or state law by failing to report the alleged incident to the authorities. Nonetheless, even if the District should have reported the incident, that bears no relevance to the issue of the Board's decision in Brown's case. Accordingly, we affirm as to this issue.

### E. Mootness and the Grounds for Brown's Termination

Brown argues the case against her and the grounds for her termination were moot at the time of the Board hearing because there was no controversy for the Board to

decide as Student J and his mother denied Brown ever touched Student J. We disagree.

We find the grounds for termination brought against Brown were not moot. Although Student J, his mother, and Brown all stated Brown never touched Student J, Owens and Kelly both alleged they saw Brown touch Student J. Thus, there was a "real and substantial" controversy for the Board to settle, and the Board's determination of whether Brown was fit to teach would have a "practical legal effect" because it would either result in Brown's teaching contract being terminated or upheld. *See Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 25, 630 S.E.2d 474, 477 (2006) ("A justiciable controversy exists when there is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute that is contingent, hypothetical, or abstract."); *id*. at 26, 630 S.E.2d at 477 ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court."). Accordingly, we affirm as to this issue.

### F. Transcript of the Board Hearing

Brown argues the District did not file a transcript of the Board hearing to the circuit court as required by section 59-25-480 of the South Carolina Code (2019), and without the transcript of the Board hearing, there was "a lack of substantial evidence in the record to support" the Board's finding that Brown was unfit to teach.

Although Brown states she was told by the Cherokee County Clerk of Court's office that no transcript was filed in this case, the District has provided substantial evidence it did file the transcript of the Board hearing. First, it attached a letter from its counsel to the Cherokee County Clerk of Court's office to its return to Brown's designation of the matter to be included in the record. In this letter, dated December 1, 2015, the District's counsel stated, "Enclosed herewith for filing pursuant to S.C. Code Ann. § 59-25-480, please find a certified copy of the transcript record of the proceedings before Respondent Cherokee County School District Board of Trustees . . . ." Furthermore, the circuit court's order affirming the Board's finding that Brown was unfit to teach stated, "After reviewing the transcript of the School Board's hearing and exhibits presented as part of the hearings record . . . the School Board's decision is affirmed." Therefore, we find the District filed a transcript of the Board hearing with the circuit court as required by section 59-25-480. *See* § 59-25-480(B) ("Notice of the appeal and the grounds thereof shall be filed with the district board of trustees. The district board shall, within thirty days thereafter, file a certified copy

of the transcript record with the clerk of such court.").  Accordingly, we affirm as to this issue.

### G. Brown's Remaining Issues

Brown argues her termination was excessive because she "was an exemplary teacher" for the District for seventeen years "with no record of being dishonest," and she did not touch or assault Student J.  She also claims the circuit court and Board erred because it failed to rule "that during the summer months when school was out, Brown was not under a contract with" the District.

Brown abandoned these issues on appeal because she failed to cite to any supporting authority for her arguments.  *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (providing an appellant abandons an issue by "fail[ing] to provide arguments or supporting authority for his assertion"); *Fields v. Melrose Ltd. P'ship*, 312 S.C. 102, 106 n.3, 439 S.E.2d 283, 285 n.3 (Ct. App. 1993) (stating an issue is deemed abandoned on appeal and, therefore, not presented for review, if it is argued in a short, conclusory statement without supporting authority). Accordingly, we affirm as to these issues.

## IV.    CONCLUSION

Based on all of the foregoing, we affirm the circuit court's orders affirming the Board's determination.

**AFFIRMED.**[10]

**LOCKEMY, C.J., and KONDUROS and HILL, JJ., concur.**

---

[10] We decide this case without oral argument pursuant to Rule 215, SCACR.